# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7555 | **DATE** | 11/10/2003 |
| **CASE TITLE** | Lefkovitz, et al. vs. Wagner, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' motion to confirm arbitration award is granted. Accordingly, the award issued on 3/5/2003 is confirmed in its entirety. Various motions to intervene are denied as untimely. Any pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 12 2003 date docketed | 99 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 11/10/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SIGMUND LEFKOVITZ, et al., )
)
    Plaintiffs, )
)
v. ) No. 97 C 7555
)
NATHAN WAGNER, et al., )
)
    Defendants. )
)
)

DOCKETED
NOV 1 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sigmund Lefkovitz, various family members, and various family trusts seek confirmation of an arbitration award. Defendants Nathan Wagner, Wagner Associates, Robert U. Goldman, Ltd., Jay Felner, Albert Schwartzberg, NCIS Corp., and New Century Services, Inc., move to confirm and vacate portions of the arbitrator's award of March 5, 2003, claiming that the arbitrator engaged in misconduct and exceeded his authority.[1] I confirm the award in its entirety.

I.

The procedural and factual history of this case is quite complex, requiring a brief overview of the interrelationships of the involved parties. Six principals jointly developed, owned, and

___
[1] In September, 2003, six years after commencement of this action, various entities and individuals moved to intervene pursuant to Fed. R. Civ. P. 24. The various proposed intervenors are apparently controlled by the individual defendants in this case, as indicated in various admissions in pleadings in the case. The motions are denied as untimely.



leased a variety of properties, predominantly nursing homes, through an agreement known as the Jarnis Partnership Agreement ("Agreement").[2] These principals are Sigmund Lefkovitz, Irving Lefkovitz, Nathan Wagner, Robert U. Goldman, Jay Felner, and Albert Schwartzberg. The ownership and management structure of these properties involves a number of levels. Each piece of property is owned by a realty entity, which then leases the property to a management entity. 29-31 Associates ("29-31 Assoc.") is one of 29 such realty entities, which leased its property to the New Rochelle Nursing Home Partnership ("NRNH"), which in turn managed the New Rochelle Nursing Home. NRNH had three partners, Sigmund and Irving Lefkovitz and Mr. Schwartzberg. The realty entity is owned by one of 24 separate Florida limited partnerships, in this instance 29-31 Associates LP ("29-31 LP"). The Florida limited partnerships are owned by Jarnis United Properties Co. ("Jarnis"), which owns the limited partnership interests, and by five Nevada corporations, which owns the general partnership interests. Jarnis and the Nevada corporations are owned by the six principals, in roughly equal proportions.

Three separate but related proceedings were consolidated before one arbitrator. The first proceeding ("Proceeding 1") was a lawsuit filed by Albert Schwartzberg against NRNH and two of its

---

[2] A number of family members of the principals, as well as trusts, were also party to the agreement.

partners, Sigmund and Irving Lefkovitz in the Circuit Court of Cook County. Mr. Schwartzberg alleged violations of the NRNH partnership agreement by the Lefkovitzes, as well as breach of their fiduciary duties. In April 1998, the parties agreed to arbitration of these disputes, selecting Robert Grossman as the arbitrator.

In October 1997, the Lefkovitzes, along with numerous other related plaintiffs, filed a lawsuit ("Proceeding 3") in this court alleging a breach of the Agreement and of fiduciary duty, as well as violations of RICO. The defendants to this action included Mr. Wagner, Wagner Associates, Robert U. Goldman, Ltd., Mr. Felner, Mr. Schwartzberg, NCIS Corp., and New Century Services, Inc. Pursuant to the Jarnis Agreement, this court ordered Proceeding 3 to arbitration on June 3, 1998, and in August 2000, dismissed the case with leave to reinstate after arbitration. After consultation with Mr. Grossman and the American Arbitration Association ("AAA"), the plaintiffs filed their claim as a counterclaim to Proceeding 1.

Finally, in March 1998, 29-31 Assoc. filed a lawsuit ("Proceeding 2") against NRNH and the Lefkovitzes in the Circuit Court of Cook County, alleging that defendants owed back rent, unpaid charges, and taxes for the leased property. The parties agreed to submit this dispute to arbitration before Mr. Grossman in February 1999. On March 5, 2003, after arbitration proceedings

lasting nearly 60 months, Mr. Grossman entered a final award on these claims, awarding damages against each side on various claims.

II.

As a preliminary matter, defendants raise the issue of this court's jurisdiction to review the arbitration award. The Federal Arbitration Act ("FAA") does not create subject matter jurisdiction for federal courts to review an award. *International Insur. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2001). Independent jurisdictional grounds must exist before I can review the award. *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999). As the claim that underlies Proceeding 3 involved a federal question and was originally filed in this court, I have continuing jurisdiction to review the award as it relates to that proceeding. *See, e.g., IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645, 653 (7th Cir. 2001) (stating that the district court had jurisdiction to confirm an arbitration award when the claim was originally filed in that court). Defendants argue, however, that I do not have jurisdiction to review the award as it relates to Proceeding 2, and that I only have jurisdiction over review of Proceeding 1 if I consider it as a separate action.[3]

---

[3] Defendants also state that Mr. Schwartzberg consents to have the Proceeding 1 portion of the award reviewed before this court even if diversity jurisdiction does not exist, and that he in fact would prefer such review. However, parties cannot create subject matter jurisdiction through their consent. *See, e.g., Bates v. Johnson*, 901 F.2d 1424, 1428 (7th Cir. 1990) ("parties may not stipulate to judicial power").

Plaintiffs argue that I have jurisdiction over both Proceeding 1 and Proceeding 2 through the supplemental jurisdiction provisions of 28 U.S.C. § 1367. That section provides that when a federal court has original jurisdiction over a claim, it may exercise jurisdiction over "all other claims that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As I have jurisdiction over Proceeding 3, I may exercise jurisdiction over Proceedings 1 and 2 if they are part of the same case or controversy. "A loose factual connection between the claims is generally sufficient." *Ammerman v. Sween*, 54 F. 3d 423, 424 (7th Cir. 1995); *see also Baltimore and Ohio v. Wisconsin Central, Ltd.*, No. 93-C3519, 1997 WL 51460, at *9 (N.D. Ill. Feb. 3, 1997) (Hart, J.).

Defendants object to this court's review of the portion of the award headed Proceeding 2, claiming that the parties in that proceeding are not parties to the original action, Proceeding 3. However, those parties, NRNH and 29-31 Assoc., voluntarily submitted their dispute before Mr. Grossman. The issues in the dispute are related to the issues in Proceedings 1 and 3. The case before this court is review of one arbitration award, resulting from hearings before one arbitrator. While the award does provide headings from the three proceedings that were consolidated, it also

5

intertwines the awards under those headings.[4] While some of the claims underlying the award involve nominally different parties, the parties include the six principals and the partnerships they formed (Jarnis, NRNH, 29-31 Assoc., etc.). This arbitration award is sufficiently one "case or controversy" to grant this court jurisdiction for review.

III.

The FAA "establishes 'a federal policy favoring arbitration'." *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988) (citing *Shearson/American Express, Inc. v. McMahon*, 483 U.S. 1056 (1987)). Review of arbitration awards is extremely narrow to "prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative." *Id.* Section 10 of the FAA provides the limited grounds for review of an arbitration award, stating that an award may be vacated:

> (a) Where the award was procured by corruption, fraud, or undue means. (b) Where there was evident partiality or corruption in the arbitrators, or either of them. (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (d) Where the arbitrators

---

[4] For example, after making awards under the heading Proceeding 2 and making provision for payment out of the assets of NRNH, the arbitrator placed a lien on those assets to secure payment of the judgment under Proceeding 3.

exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. (e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10. Defendants challenge the award on the grounds contained in (c) and (d).

A.

Defendants first allege that Mr. Grossman's conversation with the parties about compensation due to the AAA, along with a comment by plaintiffs' counsel, constituted misconduct. In a status hearing on August 26, 2002, Mr. Grossman notified the parties that fees were past due for the arbitration and needed to be paid. He further stated that the amounts were due by September 3, and that if the fees were not paid, proceedings would be suspended and only the award pertaining to a party who did pay would be entered. Mr. Grossman indicated that he did not want to have to deal with the issue of fees again. Plaintiffs' counsel assured him that he should not have to. Defendants allege that this statement about fees from Mr. Grossman violated AAA Rule 50 and constituted misconduct on his part. AAA Rule 50 states that "[a]ny arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator." Mr. Grossman's actions in dealing directly with the parties about compensation arguably violated this rule. *See, e.g., In re Catalyst Waste-to-Energy Corp*, 164 A.D.2d 817, 820 (N.Y. App. Div.

7

1990); *In re I. Jerry Fischer*, 106 A.D. 2d 314, 316 (N.Y. App. Div. 1984).

Even on a clear showing of misconduct, however, the party seeking to vacate an arbitrator's order must show that it was deprived of a fair hearing. *See, e.g., M&A Electric Power Coop. v. Local Union No. 702, IBEW*, 773 F. Supp. 1259, 1262 (E.D. Missouri 1991). Defendants allege that Mr. Grossman's discussion of compensation with the parties was misconduct that prejudiced their position and prevented them from receiving a fair hearing. Conclusory statements about prejudice are not sufficient. Defendants fail to show that Mr. Grossman even knew of their alleged dispute about fees, let alone that the knowledge affected his final award. On the contrary, all payment of fees was handled through AAA and, when defendants refused to pay the invoice, plaintiffs advanced the total amount to AAA. Plaintiffs' attorney's statement was not sufficient to alert Mr. Grossman as to any dispute over his compensation.

Defendants also allege that Mr. Grossman's hiring of BDO Seidman ("Seidman") as an "arbitration consultant" constituted *ex parte* communications that warrant vacation of the award. *Ex parte* acts by the arbitrator have been held to constitute misconduct. *See, e.g., Hahn v. A.G. Becker Paribus, Inc.*, 518 N.E. 2d 218, 224 (Ill. App. 1987) (collecting cases). Arbitrators may not base their awards on independent investigations. *In re Avraham*, No. 91-

C1238, 1991 WL 177633, at *3 (S.D.N.Y. Sept. 4, 1991). Mr. Grossman's consultation with Seidman regarding key issues in this arbitration could potentially support vacation of this award.

Defendants are unable to show, however, that their position was prejudiced by any communication between Mr. Grossman and Seidman. After the alleged communication took place, Mr. Grossman reopened the hearing to allow defendants to present additional testimony on the issue of executive level compensation. Further, after the alleged *ex parte* communication and the additional testimony from defendants, Mr. Grossman raised the level of compensation to be granted defendants for the years 1996, 1997, 1998, and 1999. Defendants are unable to show that they were prevented from having a fair hearing by these communications.

B.

Defendants state that consolidating the various actions into one arbitration proceeding exceeded Mr. Grossman's authority and warrants vacation of this award. 9 U.S.C. § 10(d). Courts, and by extension arbitrators, cannot consolidate arbitration proceedings without the consent of the parties. *See, e.g., Connecticut General Life Ins. Co. v. Sun Life Assurance Co.*, 210 F.3d 771, 774 (7th Cir. 2000). Consolidated arbitration proceedings are favored, however, for reasons of judicial economy and consistency. *Id.* at 774, 776. Here, Proceedings 1 and 2 were willingly submitted to the arbitrator, but defendants argue that Proceeding 3 was consolidated

9

without their consent. However, Proceeding 3 was never a separate arbitration, but rather a counterclaim to Proceeding 1.[5]

Defendants also claim that Mr. Grossman exceeded his authority by issuing an award affecting non-parties, specifically Jarnis. However, the Agreement that forms the basis for this arbitration is broad, providing for resolution of "any dispute or controversy arising under, out of or in connection with or in relation to this Agreement." Defendants admit that the agreement to arbitrate covers nonsignatories as well as signatories, such as affiliates, agents, or intended beneficiaries. *See* Defendants' Memorandum, at 6 (Jan. 12, 1998). As defined in the Agreement, the non-parties defendants complain about all fall into one of these categories. Further, defendants may not raise the rights of third parties, especially where, as here, those parties could have intervened in the underlying arbitration.[6] *See, e.g., Bruscianelli v. Triesmstra*, No. 99-C6446, 2000 WL 1100439, at *4 (N.D. Ill. Aug. 4, 2000) (Nordberg, J.). Finally, Mr. Grossman found that this dispute was essentially "among the same six families who, with minor financial interests of third parties, own and control the

---

[5] After a hearing, Mr. Grossman and the AAA decided that the claims by plaintiffs would best be handled by filing them as a counterclaim to Proceeding 1.

[6] As the arbitration proceedings lasted over 60 months, and the third parties are all owned at least in part by defendants, those parties clearly had notice of the ongoing arbitration and its potential ramifications.

10

assets which are the subject of this arbitration." See March 6, 2003 Opinion of Arbitrator Grossman, at 1. "Neither errors in the arbitrator's interpretation of law or findings of fact ... justify reversal of the arbitrator's award." *Bargenquast v. Nakano Foods, Inc.*, 243 F. Supp. 772, 774 (N.D. Ill. 2002) (Bucklo, J.).[7]

Defendants allege that Mr. Grossman exceeded his authority by deciding issues not submitted to him. The scope of arbitration is determined by the arbitration agreement and the issues submitted by the parties. *See, e.g., Amer. Postal Workers Union v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999). The arbitration agreement in this case is very broad. See Defendants' Motion, at 8 (Jan. 12, 1998). "The arbitrator's interpretation of the scope of the issue [presented to him] must be upheld so long as it is rationally derived from the parties' submission." *Amer. Postal Workers Union*, 185 F.3d at 835. Defendants object to four issues resolved by Mr. Grossman: the preparation of financial statements; the rate of compensation for services rendered by partners; the validity of 2001 and 2002 Jarnis Amendments; and the time period over which the fees paid would be examined. These issues are rationally derived

---

[7] Defendants rely on *Fiat v. Ministry of Fin. and Planning*, No. 88-C6639, 1989 WL 122891 (S.D.N.Y. Oct. 12, 1989). This reliance is misplaced. The present case is closer to *DiGhello v. Buscani*, 673 F. Supp. 85 (D. Conn. 1987) (cited within *Fiat*). The parties and non-parties are significantly intertwined and are covered by the arbitration agreement, unlike the entities in *Fiat*.

11

from the submitted issues, which relate to breach of fiduciary duties and misappropriation of funds.[8]

Defendants next allege that Mr. Grossman applied his own personal views, rather than the contract terms, in making the award. The arbitrator's award must be based on a clear disregard of the contract language before this court can vacate that award. *Anheuser-Busch, Inc. v. Beer et al., Local Union No. 744*, 280 F.3d 1133, 1137 (7th Cir. 2002) ("the fact that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision"). Defendants claim that the award regarding compensation for services provided demonstrates that the arbitrator disregarded the contract language. However, the contract at issue, the Agreement, contains two sections dealing with compensation to partners for services provided. Defendants and plaintiffs submitted different interpretations for computing that compensation, demonstrating that the contract was not unambiguous on this issue. Even if Mr. Grossman looked outside of the contract in his interpretation efforts, that does not clearly show a disregard for the contract language, as the contract itself is not clear about the relationship between the two sections. *Anheuser-*

---

[8] Defendants' objection to Mr. Grossman's ruling on the validity of the 2001 and 2002 Jarnis Amendments is strained, as defendants introduced those amendments into the proceedings in an attempt to limit Mr. Grossman's authority in an arbitration that had begun years earlier.

12

*Busch*, 280 F.3d at 1139 (noting that looking beyond the contract itself is appropriate when interpreting ambiguous terms).

Defendants allege that the award must be vacated because Mr. Grossman delegated his duties to Seidman by hiring them as "arbitration consultants." It is true that arbitrators may not delegate their duties. *See, e.g.*, 3 I. MacNeil, *et al.*, FEDERAL ARBITRATION LAW § 37.2.1 (1999). However, there is no indication that Mr. Grossman did not decide the issues before him, or that Seidman did so instead.

Defendants argue that the award, at least with respect to the portion under the heading Proceeding 2, paragraph D, must be vacated because placing a lien on the award under this heading exceeded the arbitrator's authority. After holding NRNH liable to 29-31 Assoc. for various amounts, the arbitrator placed a lien on those assets pending payment of the judgment under the heading Proceeding 3. Defendants argue that this lien is counter to a Stipulation entered into by the parties on June 26, 2000, and therefore must be vacated. However, nothing in the Stipulation states that a lien may not be placed on the amounts awarded. Nor does the lien change anything in the portion of the Stipulation that the parties agreed would not be changed. One award was issued, for one arbitration. Mr. Grossman was within his authority as an arbitrator to place the lien on one portion of the award to ensure a complete remedy for all parties. *See, e.g., United*

*Electrical Radio & Machined Workers of Am. v. Honeywell, Inc.*, 522 F.2d 1221, 1226 (7th Cir. 1975) (stating the need for flexibility when formulating remedies in arbitration).

Defendants further argue that the portion of the award under Proceeding 2 that holds the Lefkovitzes not personally and individually liable must be vacated. Defendants argue that Mr. Grossman misapplied New York law and misinterpreted the contract, finding that the Lefkovitzes were still covered by the terms of the lease with 29-31 Assoc. However, this court may not vacate an award based on the arbitrator's interpretation of law. *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994).

Finally, defendants seek to vacate the portion of the award, under the heading Proceeding 1, that awards punitive damages against Mr. Schwartzberg and orders payment of those damages to various 501(C)(3) charitable organizations. Defendants argue that Mr. Schwartzberg had no notice of the potential for an award of punitive damages, and was thereby deprived of a fair hearing. In Mr. Grossman's November 1999 rulings, he found that Mr. Schwartzberg's actions did not rise to a level warranting damages, but specifically reserved the issue of punitive damages for a later phase of the proceedings. Mr. Grossman was also acting within his authority when he ordered that the punitive damages assessed against both the Lefkovitzes and Mr. Schwartzberg be paid to charities.

IV.

Defendants have presented no valid reason for this court to vacate the award. The arbitrator neither engaged in misconduct warranting vacation nor exceeded his authority. I therefore confirm the award, issued on March 5, 2003, in its entirety.

ENTER ORDER: *Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 10, 2003